In the Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Rehabilitate the TITLE AND MORTGAGE GUARANTEE COMPANY OF BUFFALO.

Supreme Court, Erie County, November 29, 1933.

*Thomas C. Burke,* for the Superintendent of Insurance.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*Thomas R. Wheeler* of counsel], for the Marine Trust Company of Buffalo.

*Moot, Sprague, Brownell, Marcy, Carr & Gulick* [*William L. Marcy* of counsel], for certain certificate holders.

*Edward C. Schlenker,* for himself and for Jehle Trust Estate and others.

*Henry A. Warner,* in person, and for Kate Warner.

*A. S. Thompson,* for the Veterans Administration.

*George F. Brown,* in person.

HINKLEY, J. This is an application by the rehabilitator of the above company for certain relief, including authority to administer certain real estate, bonds, mortgages, cash, Liberty bonds and real property aggregating approximately $11,000,000, and now held by the Marine Trust Company of Buffalo as depositary.

The determination of this application requires an exhaustive study and analysis of the statutes relating to rehabilitation and the depositary agreement invoved herein, together with the certificates issued thereon.

On August 14, 1933, under the authority of section 401 of the Insurance Law, this court granted an order of rehabilitation of the above title company. The order was based upon the consent of a majority of the directors of that corporation. The order provided, under the authority of section 402 of the Insurance Law, that the Superintendent of Insurance as such rehabilitator should take possession of the *property* of the company. Under the authority of article XI of the Insurance Law and chapter 745 of the Laws of 1933, the Superintendent of Insurance has continued to act as such rehabilitator.

The particular corporation here involved had engaged in a form or phase of business beyond the pale of title guaranteeing and searching. Briefly, it deposited and continued to deposit bonds and mortgages with the Marine Trust Company of Buffalo, which constituted collateral security for certificates of mortgage indebtedness which the title company sold to the public. These certificates were secured by an agreement entered into between the title company on the one hand and the Marine Trust Company of Buffalo as depositary on the other. By proper referenec in the certificates of mortgage indebtedness the holders of such certificates became entitled to certain benefits provided in the depositary agreement.

There is no particular allusion in any of the rehabilitating statutes to this branch of the company's business. Reference, therefore, must be had to the general language of the law to determine the status of the rehabilitator toward the bonds and mortgages so deposited and the rights of the mortgage certificate holders, the creditors of the company and its stockholders. The interests of various individuals, firms and corporations in the company vary, but all such interests are equally sacred and properly covered by the protecting mantles of the Constitutions. This decision must turn upon a legal definition of the word " property " as contained in section 402 of the Insurance Law. This court had legislative authority under that section, and in accordance therewith turned over, by proper order, to the rehabilitator the *property* of the company. This gave to the rehabilitator absolute control, subject

to the approval of the court, of all of the property of the title company whether deposited as a pledge or otherwise. Prior temporary relinquishment of possession of property by the company did not limit the absolute right of the rehabilitator to take such property of the title company unto himself. To that extent the rehabilitator has greater powers than the title company had before the order of rehabilitation. Having the control and possession of all of the property of the company, the rehabilitator is authorized to exercise the functions set forth in chapter 745 of the Laws of 1933, as amended by chapter 780 of the Laws of 1933. The bonds and mortgages, cash, Liberty bonds and real property deposited with the Marine Trust Company of Buffalo were at all times the property of the company. Although the bonds and mortgages were deposited in series, the depositary agreements for each series are the same so far as affects this decision. The depositary agreements provided that the title company represented itself as the owner of the bonds and mortgages so deposited. At no time did the company agree to nor did it relinquish that ownership to the depositary, the certificate holders or any other individual or corporation. The company retained and until the order of rehabilitation exercised exclusive control, right of substitution and actual ownership of the bonds and mortgages.

"Bonds and mortgages * * * are personal property." (*Nedlin Realty Co.* v. *Bachner*, 223 App. Div. 785.) A mortgage itself " is not an absolute conveyance, [of real property] but a pledge of property as security for the debt." (*Sullivan* v. *Rosson*, 223 N. Y. 217, at p. 224.) " If a mortgage is a pledge or security for the payment of a debt, a chattel a mere chose in action * * * it is necessarily the subject of a pledge; and the contract by which it is pledged, vests the pledgee with only a qualified and special property in it, the pledger retaining the general ownership." (*Campbell* v. *Parker*, 22 N. Y. Super. Ct. [9 Bosw.] 322, at p. 331.) " The assignment by Anna to Carpenter constituted a pledge of the mortgage to him as security for the sum named. * * * She remained the general owner of the mortgage, and he had a special interest therein as security for the sum named. (*O'Dougherty* v. *Remington Paper Co.*, 81 N. Y. 496, at p. 498.) The certificate holders have an exclusive property right in such certificates but no ownership in the bonds and mortgages deposited with the Marine Trust Company. The statement in the depositary agreement that the title company intends to *sell and dispose* of the bonds and mortgages in undivided co-ordinate shares is subordinate to the fact that the company did not do so but *assigned* " an undivided co-ordinate share of the same amount in the principal

sum secured by the bonds and mortgages deposited or which may hereafter be deposited." The use of the words "agent" and "attorney" in the depositary agreement does not alter the language of the certificate that "the company is irrevocably empowered exclusively of all others to exercise control over the bonds and mortgages so deposited." There is no clause in either the depositary agreement or the certificates of mortgage indebtedness which covenanted at any future time to transfer either the title or the ownership of the bonds and mortgages to the depositary or the certificate holders. Unless sooner paid, the title company agreed at the end of ten years, or upon a date fixed in the certificate, to pay to the certificate holder the principal *sum, with interest* secured by said certificate to be paid.

The contentions that the rehabilitator seeks to deprive the certificate holders of constitutional rights and that the court has no jurisdiction herein fall of their own weight in the light of the certificates, depositary agreement and statutes. There is no statutory or other requirement that the rehabilitator shall give notice of his application for this or any other similar court relief to the holders of certificates of mortgage indebtedness any more than to any of the other creditors of the title company. The notice given in this instance was proper in the discretion of the court which prescribed its form. The objection that no sufficient notice was given to the holders of certificates of mortgage indebtedness is untenable.

The Marine Trust Company is in no sense an owner of the bonds and mortgages deposited with it nor has it any rights equal to or superior to the duly constituted legal authority of the rehabilitator to acquire all of the property of the title company. The trust company is simply a depositary with strictly limited powers and obligations. The depositary agreement provides no specific sum or consideration flowing to the depositary. There has not been a strict compliance with the depositary agreement because the principal sum of all deposited bonds and mortgages is now less than the principal sum of the outstanding certificates of mortgage indebtedness. The differential which is relatively small is made up of cash, Liberty bonds and real property. The turning over by court order to the legally constituted rehabilitator of the control of all of the bonds and mortgages, cash, Liberty bonds and real property in an amount in excess of the principal sum of the outstanding certificates of mortgage indebtedness will relieve the Marine Trust Company of liability under those active covenants of the depositary agreement which, since the order of rehabilitation, cannot be enforced. With the limitations which the court is

placing upon the power herein granted to the rehabilitator and acting under and by command of the court, the Marine Trust Company may safely act without fear that liability may be charged against it by reason of its obedience to duly constituted authority.

Surely there could be nothing gained by any certificate holder in the event of the denial of this application. The title company is stalemate so far as being able to carry out that branch of its business in which the holders of certificates of mortgage indebtedness are deeply interested. The rehabilitator is seeking to prevent further loss while awaiting some feasible approved plan of rehabilitation. By refusing the rehabilitator access to the assets of the company deposited with the Marine Trust Company, the court would prevent any conservation of such assets and, to the damage of all interested, thwart the very object of rehabilitation. The suggestion that the rehabilitator would dissipate the depositary fund is without adequate foundation and strikes at the very root of rehabilitation legislation. Testimony of the Assistant Deputy Superintendent of Insurance in charge of the rehabilitation of the title company was had at the hearing upon this application. His testimony and his conduct are indicative of a desire upon his part to conserve every available asset of the company, to relieve the burden of those who must bear the loss due to their investment in a company which seeks rehabilitation and may face liquidation. If it is proper that this fund should remain stagnant, then the entire company should have been left to drift without legislative and judicial interference.

The court is informed that the application for the right to administer Series A-P has been withdrawn under an adjustment with the single holder of all the certificates pertaining to that series.

Order may be entered for the relief asked for herein, with the limitation that no action shall be taken by the rehabilitator or the depositary under subdivisions " e " and " f " of authority and direction No. 1 of the notice of motion nor under subdivisions " h " and " i " of authority and direction No. 2 of the notice of motion, without specific prior approval of the court.